UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**WALTER AUTO LOAN TRUST,**
**ET AL.,**

    Plaintiffs,

  v.                                      No. 4:23-cv-00974-P

**MANSFIELD FINANCING GROUP**
**INC., ET AL.,**

    Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiffs' Motion for Default Judgment. ECF No. 31. Having considered the Motion, relevant docket entries, supporting documentation, and the applicable law, the Court concludes that the Motion should be and is hereby **GRANTED**. The Court therefore **ORDERS** that default judgments be entered against Defendants Mansfield Financing Group, Inc. d/b/a CNAC, Mansfield Auto Group, Inc. d/b/a JD Byrider, and Richard Domaleski.

## BACKGROUND

This dispute arises from Defendants' breach of a Master Receivables Agreement ("MRA") and Personal Guaranty between Plaintiffs and Defendants. Plaintiffs operate a financial technology company that provides automobile dealerships and finance companies with loan performance analytics and access to capital. Defendants operate a car dealership in New Hampshire. As part of their operations, Defendants allow their customers to purchase vehicles on credit. Defendants require their customers to execute retail installment contracts ("RICs"), which allow a customer to pay Defendants on a monthly basis until the car is fully paid off. Plaintiffs offer their partners (dealerships) the option to sell the RICs in exchange for a negotiated price. On January 13, 2022, and September 28, 2022, Plaintiffs and Defendants executed the MRA,

under which Defendants agreed to convey to Plaintiffs several portfolios of RICs that Defendants originated. Defendant Domaleski also entered into a Personal Guaranty, which guaranteed the delivery of certificates of title and the original RICs.

Plaintiffs allege that Defendants have failed to honor their obligations under the MRA. Plaintiffs state a claim for breach of contract (the MRA) and breach of the Personal Guaranty. Plaintiffs also seek a declaratory judgment and an award of reasonable attorneys' fees. Defendants filed an Answer in this case but have since filed a Motion to Withdraw their Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint. Counsel for Defendants have also filed Motions to Withdraw as Counsel. The Court granted those motions and ordered Plaintiffs to move for Default Judgment. Plaintiffs' Motion for Default Judgment is now before the Court.

## LEGAL STANDARD

A plaintiff may move for default judgment under Federal Rule of Civil Procedure 55. FED. R. CIV. P. 55(a). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Courts use a three-step analysis to determine whether a party can secure a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). *First*, a party must fail to respond or otherwise defend against an action. *See id. Second*, an entry of default must be entered when the default is established by affidavit or otherwise. *See id. Third*, a party must apply to the court for a default judgment after the Clerk's entry of default. *See id.*

## ANALYSIS

Plaintiffs satisfy the requirements for a default judgment in this case. Defendants Mansfield Financing Group, Inc. ("Mansfield Financing"), Mansfield Auto Group, Inc. ("Mansfield Auto"), and Richard Domaleski have failed to defend the claims against them. The Clerk of the Court entered default upon Plaintiffs' request, and the request was properly supported by affidavits. ECF Nos. 31, 34. Plaintiffs

have timely filed a Motion for Default Judgment. ECF No. 31. The decision to enter a default judgment is discretionary, and the Court will resolve any doubt in favor of the defaulting party. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In exercising the Courts' discretion, it should consider whether: (1) default judgment is procedurally warranted; (2) there is a sufficient factual basis in the complaint that would entitle the plaintiff to judgment; and (3) the specific dollar amount of damages can be determined with mathematical calculation using information in the pleadings and supporting documents. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The Court addresses each in turn.

### A. Procedural Requirements

The Court must first determine whether default is procedurally warranted. In doing so, the Court considers whether: (1) there is an issue of material fact; (2) substantial prejudice is present; (3) proper grounds for default are clearly established; (4) the defaulting party made a good faith mistake or committed excusable neglect; (5) default judgment would be a harsh remedial measure; and (6) the Court would feel obligated to set aside default upon a defendant's motion. *See Davis v. Parkhill-Goodloe Co., Inc.*, 302 F.2d 489, 495 (5th Cir. 1962).

*First*, Plaintiffs' well-pleaded complaint raises a right to relief. Admittedly, this is an unusual case in which Defendants now state that "[p]racticalities and realties require the [Defendants] to abandon the defense of the claims." ECF No. 25 at 2. Defendants' Counsel represented that they "fully discussed with their clients the ramifications of withdrawing the answer and affirmative defenses" and that "[t]he [Defendants] understand and do not object to the Court approving counsel withdrawing their appearances and representation in this matter." *Id.* Accordingly, the Court finds that Defendants Mansfield Financing, Mansfield Auto, and Richard Domaleski have failed to file an operative answer to Plaintiffs' Complaint. *Second,* Defendants' failure to defend the claims against them has halted the adversarial process, causing substantial prejudice to Plaintiffs. Additionally, Defendants have had the opportunity to defend the claims

against them and have stated that they do not wish to do so. There is no substantial prejudice to Defendants. *Third*, Defendants' failure to participate in this litigation establishes the requisite grounds for default. *Fourth,* there is no reason to believe Defendants are acting under a good-faith mistake or excusable neglect. *Fifth*, a default judgment is not harsh because it is the exact procedural device necessary for the Court to maintain its docket's efficiency in circumstances like this. *See Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (explaining the policy in favor of resolving cases on their merits is "counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion"). *Sixth*, nothing in the record suggests that the Court would set aside its putative default against Defendants if they were to move for such relief. Based on these factors, the Court concludes that a default judgment is procedurally warranted.

## B. Entitlement to Judgment

### a. Breach of Contract

The Court next assesses whether the factual contents of the pleadings provide a sufficient basis for default judgment. *See Lindsey*, 161 F.3d at 886. Although defendants concede the allegations in the plaintiff's complaint upon entry of default, the Court must evaluate the pleadings to ensure the sufficiency of the complaint. *See Nishimatsu Const. Co. v. Hous. Nat. Bank*, 515 F.2d 1200, 1201 (5th Cir. 1975). District courts refer to Federal Rule of Civil Procedure 8 to determine the adequacy of pleadings. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Under Rule 8(a)(2), a pleading must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

4

For their breach of contract claim, Plaintiffs allege Defendants materially breached the MRA by (1) failing to remit certain amounts required under Sections 2.1, 2.6, and 5.1; (2) representing that all of the vehicles contemplated by the MRAs had certificates of title (Section 4.2); (3) failing to pay for the receivables that Plaintiffs re-purchased; and (4) failing to honor warranties on vehicles that Defendants' customers purchased (Sections 2.3 and 6.6). ECF No. 20 at 13–14.

After purchasing the portfolios from Defendants, Plaintiffs informed customers that payments should now be directed to Plaintiffs. *See* ECF No. 31 at 2. After that, Plaintiffs began servicing the RICs; however, certain customers continued to make payments to Defendants instead of Plaintiffs. *Id.* Plaintiffs allege that Defendants' failure to remit these payments constituted a breach of Section 2.1 (agreement to transfer), 2.6 (servicing of receivables and related security), and 5.1 of the MRA. The Court agrees. Section 5.1 of the MRA provides:

> To the extent Originator or Originator's Servicer receives any Collections in respect of any Conveyed Property after the related Closing Date, Originator shall deliver, and shall direct Originator's Servicer to deliver, as appropriate, directly to such account or otherwise as Agora or the Portfolio Administrator may designate, within two (2) Business Days after receipt and identification thereof, any and all such Collections in the form so received.

ECF No. 20-1 at 27. As alleged by affidavit, Plaintiffs purchased several portfolios from Defendants, but Defendants continued to collect $160,406.31 in payments from customers subject to those portfolios. ECF No. 31-1 at 2. By failing to remit those payments, Defendants breached the MRA.

Plaintiffs further allege that Defendants failed to deliver certificates of title. By failing to do so, Defendants breached the MRA, which required Defendants to buyback these fourteen (14) vehicles once they were notified that they had not provided clear and marketable title. *See* ECF No. 31 at 2–3. Section 4.2 of the MRA provides:

> Each receivable created or shall create a valid, binding and enforceable first priority security interest in favor of the Originator in the Financed Vehicle. The Certificate of Title for

5

> each Financed Vehicle shows, or if a new or replacement Certificate of Title is being applied for with respect to such Financed Vehicle the Certificate of Title will be received within 90 days of the origination of the related Receivable and will show, the Originator, or if directed by Agora, such other entity so specified by Agora in its sole discretion named as the original secured party under each Receivable as the holder of a first priority security interest in such Financed Vehicle.

ECF No. 20-1 at 27. As alleged by affidavit, Defendants failed to deliver a certificate of title for fourteen vehicles, with a "buyback amount" totaling $168,157.19. ECF No. 31-1 at 2. As agreed in Section 4.2(o) of the MRA, these certificates of title must "be received within 90 days of the origination of the related Receivable." ECF No. 20-1 at 27. Despite Defendants being notified twice in 2023, they failed to deliver certificates of title for these vehicles within the required 90 days. *See* ECF No. 20 at 11.

Next, Plaintiffs allege that Defendants failed to repurchase certain receivables that were conveyed back to Defendants. *See* ECF No. 31 at 3. Section 6.4 of the MRA provides:

> In the event of a breach by Originator or its agents of any representation, warranty, covenant, or promise in this Agreement with respect to any Receivable, the party discovering such breach will provide written notice to the other party (including written notice to Agora and the Portfolio Administrator to the extent the Originator is the discovering party) . . . . If such breach is not cured by the Originator to the reasonable satisfaction of Agora within thirty (30) calendar days of the earlier of (i) notice to Originator or (ii) discovery by Originator of such breach, Originator shall repurchase such Receivable and the Related Security by paying Agora the Repurchase Price in good funds within three (3) Business Days after expiration of such thirty (30) calendar days cure period.

ECF No. 20-1 at 33. Here, upon Defendants' request, Plaintiffs conveyed back the receivables for these thirteen vehicles. ECF No. 31-1 at 3. Nevertheless, Defendants failed to pay for these receivables. *Id.* Thus, as shown above, Plaintiffs are entitled to recover $154,480.30 in losses for the conveyed receivables.

6

Accordingly, Plaintiffs' factual allegations in the complaint and supporting affidavits are enough to raise a right to relief and Defendants Mansfield Financing and Mansfield Auto are therefore jointly and severally liable for the losses incurred by Plaintiffs, for the sum of $483,043.80.

    b. <u>Breach of Personal Guaranty</u>

Next, the Court must determine whether Domaleski is jointly and severally liable for the losses incurred by Plaintiffs. Plaintiffs allege that Domaleski, the owner of both Defendant companies, breached the Personal Guaranty and is thus liable. The Court agrees.

The Personal Guaranty, signed by Domaleski, states that "[Richard Domaleski] does hereby absolutely, irrevocably, and unconditionally guarantee the obligation to deliver, prior to any Closing Date, for all Receivables subject to such Closing Date, (1) the original Contract . . . and, (2) the certificate of title." ECF No. 20-1 at 57. As shown previously, Defendants breached the MRA, and consequently, Domaleski breached the Personal Guaranty.

Having determined that Domaleski breached the Personal Guaranty by violating the terms of the MRA, the Court must now determine the nature of Domaleski's liability vis-à-vis the company Defendants. Under Texas law, a "guarantee of payment" is assumed unless the agreement specifies otherwise. *Jamshed v. McLane Exp. Inc.*, 449 S.W.3d 871, 880 (Tex. App.—El Paso 2014, no pet.). A guarantee of payment means that the guarantor is jointly and severally liable. *Id.* In contrast, a guaranty may be a "guaranty of collection (or conditional guaranty)" which means the guarantor is liable only if the amount owed cannot be collected from the primary obligor. *Id.* (citing *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no pet.)).

Here, the Personal Guaranty unambiguously states, "[t]his is an *unconditional*, absolute, continuing guaranty of performance of the above-referenced delivery obligations and it is an agreement of guaranty, not of suretyship." ECF No. 20-1 at 57 (emphasis added). Additionally, the Personal guaranty adds that "[Richard Domaleski] shall pay any reasonable attorneys' fees incurred by Agora in connection

7

therewith." *Id.* Accordingly, Domaleski is jointly and severally liable with the company Defendants for damages resulting from Defendants' breach of contract—a sum totaling $483,043.80.

  c. <u>Declaratory Judgment</u>

Finally, Plaintiffs allege that Defendants remain responsible for any warranties they made to their customers. However, Defendants have not honored customer warranties and have instead referred customers to Plaintiffs with respect to these warranties. ECF No. 31-1 at 4. As a result, Plaintiffs received inquiries from customers regarding their vehicle's warranty and even threatened lawsuits over the warranties. ECF No. 20 at 12–13. Plaintiffs seek declaratory relief.

The MRA is clear that Plaintiffs assumed none of the obligations or warranties held by Defendants. Section 2.3 provides that:

> Notwithstanding anything to the contrary in this Agreement or in the AgoraCapital Platform, Agora and the Portfolio Administrator each shall have no obligation or liability to (i) any Obligor or (ii) any other customer or client of Originator, including, in each case, any obligation to perform any of the obligations of Originator with respect to any Conveyed Property, whether absolute or contingent or otherwise known or unknown. No such obligation or liability is intended to be assumed by Agora or the Portfolio Administrator and any assumption is expressly disclaimed by Agora and the Portfolio Administrator.

ECF No. 20-1 at 16. Additionally, Section 6.4 reaffirms this:

> With respect to the acquisition of a Portfolio on the related Closing Date by Agora, on such Closing Date Originator hereby assigns, transfers and sets over to Agora, and grants to Agora a lien on and security interest in, all of Originator's rights, but not Originator's obligations, under any of the agreements with third party originators related to such Conveyed Property that comprises any portion of such Portfolio (each an "Assigned Agreement") sold on such Closing Date.

*Id.* at 35. Consequently, Defendants retained all obligations, including warranties, related to receivables under the MRA.

Thus, the Court must evaluate whether declaratory relief is warranted. To do so, the Court conducts a three-step analysis:

8

> First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action . . . Second, if it has jurisdiction, then the district court must resolve whether it has the "authority" to grant declaratory relief in the case presented. Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action.

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (citations omitted).

Applying the three-step inquiry, the Court finds that declaratory relief is appropriate here. *First*, declaratory action is only justiciable where an "actual controversy" exists. *Id.* (citing 28 U.S.C. § 2201(a)). An actual controversy exists when "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Middle S. Energy Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). While the vehicle owners' threatened lawsuits have not yet materialized, the dispute between the Parties here is both immediate and real. Defendants are actively referring customers to Plaintiffs for the fulfillment of the terms of warranties purchased alongside the vehicles. ECF No. 20 at 12–13. The controversy over the failure to honor these warranties is thus justiciable.

*Second*, having found that a controversy exists, the Court moves to step two. As a general rule, the district court may not consider the merits of the declaratory judgment action when (1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, (2) the state case involves the same issues as those involved in the federal case, *and* (3) the district court is prohibited from enjoining the state proceedings under the Anti–Injunction Act. *See Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). This Court is not aware of any state court actions involving the same issues.

*Third*, the Court must decide whether to exercise its "broad" discretion over the decision to grant declaratory relief. *Id.* at 778. The Court must "address[] and balance[] the purposes of the Declaratory Judgment Act" in exercising its discretion. *Id.* (citing *Rowan Cos., Inc.*

9

*v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989)). The Fifth Circuit provides a nonexclusive list of seven factors for the Court to consider:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy.

*Id.* (citations omitted). The interest of convenience and judicial economy clearly favor granting declaratory relief. The first three factors are inapplicable here. As to the fourth, no inequalities result from enforcement of the contract. Fifth, the Parties have been litigating the case in federal court, and nothing in the record suggests state court would be a more convenient forum. Finally, judicial economy would be substantially served by granting the requested declaratory relief. The plain legal question of whether the contract relieves Defendants of their obligations and warranties need not wait for a later date. Requiring Plaintiffs to take up the issue in the future would be inefficient and unnecessary when the contractual language is so clear. For these reasons, the Court **GRANTS** Plaintiffs' request for declaratory judgment.

## C. Damages

When a defendant defaults, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *Jackson*, 302 F.3d at 525. Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, a hearing is unnecessary if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents. *Id.*

a.  Monetary Damages

The Court must determine whether a specific dollar amount of damages can be determined with mathematical calculation using the information in the record. *See James*, 6 F.3d at 310. As stated above, Plaintiffs have shown that they incurred losses and expenses in connection with the receivables totaling $483,043.80. *See* ECF No. 31-1 at 4.

b.  Attorneys' Fees

Plaintiffs also request an award of attorneys' fees. As the prevailing party, Plaintiffs are entitled to an award of costs, including reasonable attorneys' fees. TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.009, 38.001. First, the appropriateness of the award requires finding the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. *LULAC v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). Plaintiffs present the affidavit of their counsel, Caleb B. Bulls, in which he calculates his fee to be $24,220 for his time and work on this case. *See* ECF No. 31-2 at 2. This sum is based on a rate of $500 per hour and approximately 52.3 hours of work. *Id.* Additionally, the affidavit estimates the fee of his co-counsel, Hugh G. Connor, to be $1,530. *Id.* This sum is based on a rate of $765 per hour and approximately two hours of work. *Id.* Given these estimates, as well as the evidence and circumstances of the case, the Court finds Plaintiffs' request for $25,750 in attorney's fees to be reasonable.

Upon completion of the above lodestar calculation, the Court evaluates the fees based on the twelve *Johnson* factors. These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

11

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). However, it may "not always be necessary for a district court to address each of the twelve factors in explaining the considerations affecting its decision." *Davis v. Fletcher*, 598 F.2d 469, 471 (5th Cir. 1979).

Several factors are not implicated here. Factor two is not implicated because a standard contract dispute provides no "novel" or "difficult" questions. *See Johnson*, 488 F.2d at 717. Similarly, the third factor is not implicated because, while the attorneys in this case have been competent and diligent, this case presents no legal question requiring exceptional skill. Further, the attorneys provide no information to suggest that their work on this case precluded other employment in the way contemplated by *Johnson*. Similarly, the Court finds that the proposed fees are customary in the community. *See* ECF No. 31-2 at 2. And nothing in the record suggests that time limitations were imposed on counsel "by the client or the circumstances." *Johnson*, 488 5.2d at 718. Finally, for the tenth and eleventh factors, nothing in the record suggests that this case is particularly undesirable, nor is "the nature and length of the professional relationship" atypical. *Id.* at 718-19.

The first, second, eighth, and ninth factors weigh in favor of awarding the requested attorney's fees. *Migis*, 135 F.3d at 1048. "The most critical" being "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Having considered the time and labor expended by Plaintiffs' attorneys, the Court concludes that it is reasonable for the case at hand. The sixth factor similarly supports the requested fees. Plaintiffs' counsel is compensated on a fixed basis and not by a large contingent fee contemplated in *Johnson*. Instead, the fees here are appropriate and reasonable for the work conducted. Furthermore, the most important factor, "[t]he amount involved and the results obtained," also supports the Court's decision. *Johnson*, 488 F.2d at 718. The requested attorneys' fees of $25,750 are roughly 5% of the total monetary award for Plaintiffs, a reasonable proportion.  Finally, in similar default judgments, the court has awarded attorneys a similar

amount of $26,832.26. *S & P Inv. Grp., LLC v. Kingdom Materials Holdings, LLC*, No. 4:21-CV-00159-O, 2022 WL 2919498 at *11 (N.D. Tex. July 7, 2022) (Ray, M.J.), *report and rec. adopted*, 2022 WL 2918606 (N.D. Tex. July 25, 2022) (O'Connor, J.). Thus, a fee of $25,750 appears to be reasonable for the work conducted.

Accordingly, the Court finds that factors two, three, four, five, seven, ten, and eleven are all neutral, while factors one, six, eight, nine, and twelve all support the conclusion that the requested attorneys' fees are reasonable. Considering these factors, the Court does not find it necessary to make any adjustments to the requested attorneys' fees.

Consequently, the Court accepts as reasonable Mr. Bulls' estimate of his time and rates given his experience with this area of law as well as the authorities he provides. ECF No. 31-2 at 2. The Court makes no adjustment to these figures and **GRANTS** Plaintiffs' request for attorneys' fees in the sum of $25,750.

  c. Prejudgment Interest

For post-judgment interest in diversity cases, state law governs. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (quoting *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994)). "In the absence of a statutory right to prejudgment interest, Texas law allows for an award of equitable prejudgment interest under *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985). *Bituminous Cas. Corp. v. Vacuum Tanks*, Inc., 75 F.3d 1048, 1057 (5th Cir. 1996). Further, "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Id.* (citation omitted). Here, Plaintiff is entitled to prejudgment interest in the amount of $20,529.36.

## CONCLUSION

For above reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment. ECF No. 31. The Court concludes that Defendants Mansfield Financing Group, Inc., Mansfield Auto Group, Inc., and Richard Domaleski are **jointly and severally** liable for the costs incurred by Plaintiffs regarding the failure to remit payments ($160,406.31), the failure to repurchase receivables ($154,480.30), and the value of

undelivered titles ($168,157), which total **$483,043.80**. Additionally, the aforementioned Parties are also **jointly and severally** liable for prejudgment interest totaling **$20,529.36**, and **$25,750** in attorneys' fees. The Court also **GRANTS** Plaintiffs' request for declaratory relief.

**SO ORDERED** on this **13th day of June 2024.**

*/s/ Mark T. Pittman*

Mark T. Pittman
UNITED STATED DISTRICT JUDGE